FILED
CHARLOTTE, NC
US DISTRICT COURT
WESTERN DISTRICT OF NC

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

MAY 20 2026

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:26cr-117-SCR |
| | ) | |
| v. | ) | **BILL OF INFORMATION** |
| | ) | |
| ROBERT K. DAILEY | ) | 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 1957 |
| | ) | |
| | ) | |

## THE UNITED STATES ATTORNEY CHARGES:

At all relevant times:

### Introduction

1. Beginning in 2020 and continuing through at least December 2023, ROBERT K. DAILEY executed a scheme to fraudulently obtain more than $4.6 million in Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") funds (collectively, "relief funds"), both personally and on behalf of other businesses ("clients") located in North Carolina, South Carolina, and elsewhere.

2. Using false information, including false financial information, fake employment data, and fabricated tax returns, DAILEY submitted and caused to be submitted materially false and fraudulent loan applications to the United States Small Business Administration ("SBA") and third-party participating lenders ("SBA approved lenders") on behalf of himself and clients in an attempt to obtain relief funds. As a result of the fraudulent loan applications, DAILEY and his clients received more than $4.6 million in relief funds.

3. DAILEY applied for, caused to be applied for, and received, and caused to be received, loan forgiveness for many of the PPP loans he and his clients received, by falsely representing the companies' employment data and the use of the funds on the forgiveness applications.

### Defendant and His Related Entities

4. Defendant ROBERT K. DAILEY was a resident of Fort Mill, South Carolina.

5. DAILEY owned and controlled RemeDy Financial Services, LLC ("RemeDy Financial"), located in Charlotte, North Carolina. RemeDy Financial provided clients with tax return preparation, tax planning and bookkeeping services, as well as business and financial consulting services. DAILEY controlled the bank accounts of RemeDy Financial.

1

6. DAILEY owned and controlled Roma Capital LLC ("Roma Capital"), located in Charlotte, North Carolina. Roma Capital served as an agent and consultant to assist clients in obtaining relief funds. DAILEY charged clients a fee, sometimes calculated as a percentage of the loan received, for preparation and submission of the applications for relief funds. DAILEY controlled the bank accounts of Roma Capital.

### The Paycheck Protection Program

7. The PPP was a COVID-19 pandemic relief program administered by the SBA that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating SBA approved lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

8. To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was generally required to provide documentation showing its payroll expenses, such as filed federal income tax documents. The business must have existed in an operational condition on or before February 15, 2020.

9. The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

10. A loan applicant could hire a PPP agent to be an authorized representative to prepare his or her application for financial assistance from the SBA and its certified lenders. A PPP agent was paid directly by the lender for providing loan preparation services. To receive a loan preparer fee from a lender, the PPP agent had to indicate their information in the PPP loan application documents. The total amount that a PPP agent could collect from the lender for assisting with a PPP loan application (including referral to the lender) could not exceed one (1) percent for loans of not more than $350,000, a half (0.50) percent for loans of more than $350,000 and less than $2 million, and a quarter (0.25) percent for loans of at least $2 million. The SBA prohibited PPP agents and lenders from collecting any fees from an applicant.

### The Economic Injury Disaster Loan Program

11. The Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act) was a federal law enacted on March 27, 2020, designed to provide emergency financial assistance to

2

the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

12. The provisions of the CARES Act, in conjunction with an officially declared disaster by the United States Government, allowed the SBA to offer Economic Injury Disaster Loan ("EIDL") funding to business owners negatively affected by COVID-19. Through the SBA online portal, EIDL applicants could submit personal and business information in support of an EIDL application.

13. An EIDL application included a paragraph where the applicant affirmed that the information submitted was true and correct under the penalty of perjury and other applicable criminal statutes. The application process involved filling out data fields relating to the size of the affected business entity, the ownership of the business, the number of employees, and gross revenues realized in the 12 months prior to COVID-19's impact on the national economy. The business must have existed in an operational condition on or before January 31, 2020.

14. The EIDL application information, submitted by the applicant, was then used by SBA systems to calculate the amount of money the business was eligible to receive in the form of a loan. The SBA Office of Disaster Assistance, an executive branch agency, had authority over all loans created and disbursed under the EIDL program. EIDLs were solely funded by the SBA and disbursed from government-controlled accounts maintained with the U.S. Treasury at Federal Reserve Banks throughout the United States.

15. EIDL proceeds could only be used for working capital to pay expenditures necessary to alleviate the specific economic injury the small business suffered due to COVID-19. Covered expenditures included fixed debts, payroll, accounts payable, and other ordinary and necessary financial obligations that the business could not meet as a direct result of the pandemic. EIDL proceeds could not be used to replace lost sales or profits or to expand a business. If the applicant also obtained a PPP loan, the EIDL funds could not be used for the same purpose as the PPP funds.

16. EIDL Advance was a grant program offered together with the EIDL program. The amount of the advance issued to the small business applicant was determined by the number of employees indicated on the EIDL application, $1,000 per employee, up to $10,000.

17. A loan applicant could hire an agent to prepare an EIDL application ("EIDL agent"). An EIDL agent was paid directly by the applicant for providing loan preparation services. To receive a loan preparer fee from an applicant, the EIDL Intake Application had to include the fee charged or agreed upon by the applicant and the EIDL agent. The EIDL Loan Agreement required the Borrower to certify that no fees had been paid, directly or indirectly, to any representative for services provided in connection with applying for or closing the EIDL loan, other than those reported on the EIDL loan application. If the compensation exceeded $2,500 for a disaster business loan, the Borrower had to fill out a Compensation Agreement Form 159D. All fees not approved by the SBA were prohibited.

3

## The PPP and EIDL Fraud Scheme

18.     Beginning in March 2020, and continuing through at least December 2023, DAILEY engaged in a scheme to defraud the SBA and SBA-approved lenders of more than $4.6 million to unjustly enrich himself by obtaining relief funds by means of materially false and fraudulent pretenses, representations, and promises.

### *PPP and EIDL Fraud Concerning DAILEY's Businesses*

19.     It was part of the scheme that DAILEY knowingly submitted, and caused to be submitted, PPP loan and EIDL applications and supporting documents for RemeDy Financial and other businesses that DAILEY had a personal association with that contained materially false statements and misrepresentations regarding the businesses' income, gross revenues, expenses, number of employees, and use of funds, amongst others. DAILEY also attached fabricated tax returns and other business documents to the applications. As a result, DAILEY caused almost $2 million in fraudulently obtained relief funds to be disbursed to bank accounts he controlled.  For example:

   a.  On or about February 11, 2021, DAILEY submitted, and caused to be submitted, a PPP application in the name of RemeDy Financial to an SBA approved lender ("PPP Loan x7701"). In connection with PPP Loan x7701, DAILEY falsely affirmed, or caused to be falsely affirmed, that RemeDy Financial had 8 employees and an average monthly payroll of $32,071, and he attached, or caused to be attached, a fabricated 2020 Form 940 that falsely represented that RemeDy Financial had $286,220 in payments to employees in 2020, amongst other things.

   b.  On or about July 27, 2021, DAILEY submitted, and caused to be submitted, a loan forgiveness application for PPP Loan x7701.  DAILEY falsely affirmed, and caused to be falsely affirmed, that he used $37,007 of the loan proceeds for payroll costs.

### *PPP and EIDL Fraud Concerning DAILEY's Clients' Businesses*

20.     It was part of the scheme that DAILEY, in exchange for loan preparation fees, knowingly submitted, and caused to be submitted, PPP loan and EIDL applications and supporting documents on behalf of customers known and unknown, that contained materially false statements and misrepresentations regarding those customers' business income, gross revenues, expenses, and number of employees, amongst others, and attached false tax returns to the applications.  DAILEY caused at least $2.7 million in fraudulently obtained relief funds to be disbursed to his clients' bank accounts.  For example:

   a.  On or about July 9, 2020, DAILEY submitted, and caused to be submitted, an EIDL application in the name of Business A to the SBA. In connection with the application in the name of Business A, DAILEY falsely affirmed, and caused to be falsely affirmed, that Business A had 5 employees and $801,202 in gross revenues in 2019.

4

b. On or about February 15, 2022, DAILEY submitted, and caused to be submitted, a Second Draw EIDL Application in the name of Business A to the SBA. In connection with the Second Draw Application in the name of Business A, DAILEY falsely affirmed, and caused to be falsely affirmed, that Business A had $495,565 in gross revenues.

21. It was further part of the scheme that DAILEY concealed, and caused to be concealed, from the SBA and SBA approved lenders that he prepared the PPP loan and EIDL applications on behalf of his clients and that he received loan preparer fees prohibited by the SBA. DAILEY's fees were far in excess of what was permitted by the SBA. For example:

a. On or about August 5, 2020, the owner of Business A wrote a check to RemeDy Financial for $7,500, representing a fee paid to DAILEY in exchange for Business A receiving the first EIDL draw.

b. On or about March 12, 2022, the owner of Business A wrote a check to RemeDy Financial for $17,814, representing a fee paid to DAILEY in exchange for Business A receiving the second EIDL draw.

22. In order to continue the fraudulent scheme and avoid detection, DAILEY misrepresented, concealed, and hid, and caused to be mispresented, concealed, and hidden, the purposes of the scheme and acts done in furtherance of the scheme.

## COUNT ONE
(18 U.S.C. §1343)
(Wire Fraud)

23. The Grand Jury realleges and incorporates by reference herein, all of the allegations contained in paragraphs 1 through 22 of the Bill of Information, and further alleges that:

24. Beginning in or about March 2020, through at least on or about December 31, 2023, in the Western District of North Carolina, and elsewhere, the defendant,

ROBERT K. DAILEY

with the intent to defraud, did knowingly and intentionally devise the above-described scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and for the purpose of executing such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communication in interstate commerce any writing, signal, picture, and sound, to wit, electronic loan applications, wire transfers, emails, and other electronic financial transactions in interstate commerce.

All in violation of Title 18, United States Code, Section 1343.

5

## COUNT TWO
(18 U.S.C. § 1957)
(Engaging in Monetary Transactions in Criminally Derived Property)

25.     The Grand Jury realleges and incorporates by reference herein, all of the allegations contained in paragraphs 1 through 22 of the Bill of Information and further alleges that:

26.     On or about about April 14, 2022, in the Western District of North Carolina and elsewhere, the defendant,

ROBERT K. DAILEY

did knowingly engage and attempt to engage in a monetary transaction by, through and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, money deposits which represented fraudulently obtained relief funds, such property having been derived from a specified unlawful activity, that is, wire fraud, *to wit*, a wire transfer from RemeDy Financial's BB&T Account x5231 in the amount of $124,780.88, and that while conducting and attempting to conduct such monetary transaction knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Section 1957.

6

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offense for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981, and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

   a. All property which constitutes or is derived from proceeds of the violations set forth in Counts One and Two of this Bill of Information;

   b. All property involved in or traceable to property involved the violation in Count Two of this Bill of Information; and

   c. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) and (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant's to the extent of the value of the property described in (a) and (b).

The following property is subject to forfeiture on one or more of the grounds stated above:

   a. A forfeiture money judgment in the amount of at least $1,993,110.00, such amount constituting the proceeds of the violations set forth of this Bill of Information

   b. The real property at 11152 Whitlock Crossing, Charlotte, NC, more particularly described in a deed, to Robert Dailey, filed at Mecklenburg County Register of Deeds Book 34830, Page 685;

   c. The real property at 6280 Ela Road, Whittier, NC, more particularly described in a deed, to Remedy Investment Group, LLC, filed at Swain County Register of Deeds Book 501, Page 568;

   d. Any and all interest of Defendant in Remedy Investment Group, LLC.

RUSS FERGUSON
UNITED STATES ATTORNEY

CARYN FINLEY
ASSISTANT UNITED STATES ATTORNEY

7